1

2   T. WADE WELCH & ASSOCIATES
    Chad M. Hagan (*pro hac vice*)
3   chagan@twwlaw.com
    2401 Fountainview, Suite 700
4   Houston, Texas 77057
    Telephone:  (713) 952-4334
    Facsimile:   (713) 952-4994
5

6   DLA PIPER US LLP
    David A. Grenardo (State Bar No. 223142)
7   Cynthia A. Ricketts (*pro hac vice*)
    david.grenardo@dlapiper.com
8   cynthia.ricketts@dlapiper.com
    1999 Avenue of the Stars, 4th Floor
9   Los Angeles, California 90067
    Telephone: (310) 595-3031
10  Facsimile: (310) 595-3331

11

12  Attorneys for Plaintiffs
    ECHOSTAR SATELLITE CORP., et al.

13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16                    **SOUTHERN DIVISION**

17  ECHOSTAR SATELLITE              No. SA CV 03-950 DOC(JTLx)
    CORP., et al.,
18                                  **ECHOSTAR'S TRIAL BRIEF**
                                    **PURSUANT TO LOCAL**
19              Plaintiffs/         **RULE 16-10**
                Counterclaim
                Defendants,         **[PUBLIC REDACTED VERSION]**
20
21      v.                         Date:   April 9, 2008
                                   Time:  8:30 a.m.
22  NDS GROUP PLC, et al.,          Dept:  Judge David Carter
                                           Courtroom 9D
23              Defendants/
                Counterclaim
24              Plaintiffs.

25

26

27

28

─────────────────────────────────

## I.    INTRODUCTION

Plaintiffs EchoStar Satellite L.L.C. f/k/a EchoStar Satellite Corporation, EchoStar Technologies Corporation, and NagraStar L.L.C. (collectively, "EchoStar" or "Plaintiffs") hereby submit the following Trial Brief pursuant to Local Rule 16-10 of the United States District Court for the Central District of California.   Local Rule 16-10 provides, "[A]t least (7) days before trial is scheduled to commence, each party may serve and file a trial brief which may: (a) Update the Memorandum of Contentions of Fact and Law by citing newly decided cases; (b) Brief such issues as directed by the Court; and (c) Reply to the Memorandum of Contentions of Fact and Law of any other party."   L.R. 16-10. EchoStar submits this Trial Brief pursuant to (a) and (c).

## II.    CAUSES   OF   ACTION   IDENTIFIED   IN   PLAINTIFFS' CONTENTIONS OF FACT AND LAW

EchoStar filed its Memorandum of Contentions of Fact and Law ("Contentions of Fact and Law") on January 7, 2008.  On January 16, 2008, the Court granted in part Defendants' Summary Judgment Motions, including the following claims contained in EchoStar's Contentions of Fact and Law: the Digital Millennium Copyright Act, 17 U.S.C. § 1201(b)(1) basis for Count 2; Count 4 - Communications Act of 1934, 47 U.S.C. § 605(e)(4); Count 6 – Lanham Act, 15 U.S.C. § 1114; and Count 7 – Lanham Act, 15 U.S.C. § 1125.[1]  (*See* MSJ Order at 80:23-26.)  Accordingly, EchoStar hereby updates its Contentions of Fact and Law to strike 17 U.S.C. § 1201(b)(1) from Count 2 and Counts 4, 6, and 7 in their entirety.

---

[1]  The Court's Order did not address EchoStar's Count 2 – Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2) claim.  As such, EchoStar replead the 17 U.S.C. § 1201(a)(2) claim in its Fifth Amended Complaint ("5AC").  (*See* 5AC at 50.)  The Court's Order further dismissed EchoStar's Count 12 – California Penal Code § 593d(c) claim.  However, EchoStar did not include Count 12 in its Contentions of Fact and Law.

On January 31, 2008, EchoStar filed its Fifth Amended Complaint ("5AC"), withdrawing certain claims, including the following claims contained in EchoStar's Contentions of Fact and Law: Count 11 - California Penal Code § 593d(b); Count 13 – California Penal Code § 593e(a); Count 18 – Unjust Enrichment; and Count 19 – Conversion.  Accordingly, EchoStar hereby updates its Contentions of Fact and Law to strike Counts 11, 13, 18, and 19.

EchoStar's remaining Counts, renumbered pursuant to the 5AC, include: Count 1 – Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A); Count 2 - Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2); Count 3 - Communications Act of 1934, 47 U.S.C. § 605(a); Count 4 – RICO, 18 U.S.C. § 1962(c); Count 5 – Unfair Competition, California Business & Professions Code § 17200; Count 6 – California Penal Code § 593d(a); and Count 7 - California Penal Code § 593e(b).

## III.    CONTRIBUTORY INFRINGEMENT

Contrary to Defendants' contentions, EchoStar's DMCA contributory copyright infringement theory is proper and it should be presented to the jury. Defendants were provided with proper notice of their contributory copyright infringement, Echostar satisfies the elements of contributory copyright infringement, and EchoStar has standing under the DMCA.

### A.    Defendants were Provided with Proper Notice of their Contributory Copyright Infringement

It is proper for EchoStar to proceed on its DMCA claims under the theory of contributory copyright infringement.  Defendants were provided with proper notice of EchoStar's contributory copyright infringement theory on May 31, 2005 when EchoStar filed its Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint Pursuant to FRCP 12(b)(6) ("Opposition").  (*See* Opposition, Docket Entry #231, 8:2-9:13.)  Shortly thereafter on June 30, 2005, Defendants were placed on further notice of EchoStar's contributory copyright infringement

1   theory when EchoStar filed its Notice of Supplemental Authority in Support of

2   Plaintiffs' Opposition to Defendants' Motions to dismiss Plaintiffs 4AC

3   ("Supplemental Authority").  (*See* Supplemental Authority, Docket Entry #252.)

4   More recently on December 3, 2007, Defendants were provided notice of this

5   theory in EchoStar's Opposition to Defendants' Motion for Summary Judgment on

6   Issue of NDS Distribution Network ("Distribution MSJ").  (*See* Distribution MSJ,

7   Docket Entry #619, 20:1-18.)

8
9
       **B.   EchoStar Satisfies the Elements of Contributory Copyright Infringement**

10       Defendants' argument that EchoStar cannot meet the elements of

11  contributory copyright infringement is based on the <u>wrong</u> legal standard.

12  Defendants erroneously contend that the "elements of contributory copyright

13  infringement [are]: (1) that NDS received a direct financial benefit and (2) that

14  NDS had the right and ability to supervise the infringing activity".  Defs.' Brief at

15  3:13-15.  Defendants' argument misses the mark because it is based on the

16  standard for <u>vicarious</u> infringement (a completely separate and independent basis

17  for secondary liability), and *not* <u>contributory</u> infringement.    The doctrine of

18  contributory infringement imposes liability where one person "knowingly

19  contributes to the infringing conduct of another." *In re Napster, Inc. Copyright*

20  *Litigation*, 377 F.Supp.2d 796, 801 (N.D. Cal. 2005) quoting *Fonovisa, Inc. v.*

21  *Cherry Auction, Inc.,* 76 F.3d 259, 261 (9th Cir. 1996).   As demonstrated in

22  EchoStar's Opposition to Defendants' Motion for Summary Judgment re:

23  Distribution  Network, Plaintiffs have presented more than sufficient evidence to

24  create a fact issue as to whether Defendants' December 2000 postings knowingly

25  contributed to the infringing conduct of third party, end-user pirates.  (SOF filed

26  ISO Distribution MSJ Opp. at ¶¶ 121-125.)

27
28

1    Nor can Defendants genuinely claim that they are not liable for end-user
2  piracy directly resulting from Tarnovsky's December 2000 internet postings.  The
3  Court's MSJ Order effectively summarizes the evidence on this critical point:

4       [T]he network apparently set up by Tarnovsky to distribute
5       EchoStar cards is materially identical to the one NDS exploited to
        prevent distribution of DirecTV cards. … The similarities here are
6       broad and compelling.  They establish that NDS and Tarnovsky were
7       familiar with the sort of distribution network at issue, that NDS was
        aware of Tarnovsky's participation in such conduct, and that NDS
8       ratified or condoned that conduct when it was beneficial.  At most,
9       this could demonstrate that NDS actively organized and carried out
        the network through Tarnovsky; at least it demonstrates that NDS
10      tacitly encouraged the conduct by turning a blind eye to it – formal
11      admonitions and polygraphs notwithstanding.

12      Indeed, given the past conduct Tarnovsky admits was on NDS's
13      behalf, it seems entirely typical of his employment to aid in
        effectuating a distribution network.  NDS's claim of ignorance is
14      unavailing, particularly given that NDS partially paid for the very
15      Mail & More at issue, and allowed Tarnovsky to keep the proceeds
        for the DirecTV network.  EchoStar has raised at minimum a material
16      issue of fact as to whether the conduct engaged in by Tarnovsky was
17      "as a practical matter certain to occur in the conduct of the employer's
        enterprise."  *See Rudolph v. Budget Rent-A-Car,* 97 F.3d 319, 327 (9th
18      Cir. 1996).

19      NDS apparently had a practice of hiring well-known hackers
20      and satellite pirates to "fight piracy," including efforts to "infiltrate"
        piracy organization by distributing pirated material.  *See* Hagan Decl.,
21      Ex. 18 (Hasak 30(b)(6) Dep. 27:9-13) (NDS attempts to hire the
22      hackers responsible for compromising their technology); *id.* 28:17-
        29:23 (Tarnovsky one of the two best hackers in the world); *id.*
23      ("Whenever you recruit an agent, he was not an ex rabbi or priest …
24      he was in a way a criminal").  It was fairly certain that, these
        employees would eventually cross the line between legal activities
25      and illegal ones.  In other words, NDS chose to play with fire by
26      hiring Tarnovsky, placing him in a position to infiltrate the DirecTV
        network, giving him access to the EchoStar hack, etc. Whether it
27      ordered him to engage in the EchoStar network or merely got
28      "burned" is immaterial.

1   MSJ Order at 56:2-57:2.  As such, a jury may find that EchoStar satisfies the

2   elements of contributory copyright infringement and that Defendants are liable for

3   that infringing activity.

4        **C.    EchoStar has Standing Under the DMCA**

5        Defendants erroneously contend that Plaintiffs lack standing to sue under the

6   DMCA because EchoStar is not the owner of the copyrighted programming that it

7   broadcasts.  Defendants' construction of the DMCA is flawed because the statute

8   itself does not limit claims to owners of copyrighted material, but rather, allows

9   "***[a]ny person injured*** by a violation of section 1201 . . . [to] bring a civil action in

10  an appropriate United States district court for such violation." 17 U.S.C. § 1203(a)

11  (emphasis added).  In fact, several courts agree with Plaintiffs' construction having

12  held that persons other than copyright owners, including entities that control or

13  distribute access to copyrighted works, have standing to sue under the DMCA.  *See*

14  *EchoStar Satellite, L.L.C. v. Viewtech, Inc.,* Slip Copy, 2008 WL 331399 at *2-3

15  (S.D. Cal. Feb. 5, 2008) (Agreeing that EchoStar has standing to pursue claims

16  under the DMCA against a designer, developer, and distributor of free-to-air

17  receivers); *Comcast*, 2004 WL 1718522 at *7 (denying a motion to dismiss DMCA

18  claims brought by a cable television provider that controlled access to copyrighted

19  programming); *Coxcom, Inc. v. Chaffee*, No. CIVA 05-107S, 2006 WL 1793184,

20  at *10 (D.R.I. June 26, 2006) (granting summary judgment on § 1201 claim where

21  the defendant sold devices to circumvent the descrambling technology used by the

22  plaintiff to protect programming copyrighted by a nonparty); *Macrovision v. Sima*

23  *Prods. Corp.*, No. 05 Civ. 5587(RO), 2006 WL 1063284, at *1-2 (S.D.N.Y. Apr.

24  20, 2006) (owner of "technology designed to prevent the copying of copyrighted

25  DVDs" made clear showing that the defendant's video enhancer products violated

26  DMCA).

27       In *Comcast of Illinois X, LLC v. Hightech Electronics, Inc.*, Comcast, a cable

28  television provider of copyrighted programming, asserted claims under sections

1201(a)(2) and 1201(b)(1) of the DMCA against a number of defendants involved in the Internet-based distribution of piracy devices.  2004 WL 1718522 at *1.  The court found that Comcast was "undisputably not the copyright holder of the programs . . . it provides to its subscribers," but did control "access to such protected material," along with the encryption technology that "protects the copyrighted material."  *Id.* at *6.  As here, the defendants in *Comcast* moved to dismiss the DMCA claims on the ground "that only copyright holders can bring suit under the statute."  *Id.*   The court denied the motion, rejecting such a restrictive construction of the DMCA:

> The civil remedies provided in the statute do not explicitly state that recovery is limited to the copyright holder.  Therefore, as Comcast controls access to copyrighted material and is a person injured from a violation of 17 U.S.C. § 1201, we conclude that it can bring suit pursuant to the DMCA.

*Id.*  Accordingly, EchoStar has standing under the DMCA.

## IV.   THE DECEMBER POSTINGS CONSTITUTE VIOLATIONS OF THE REMAINING CALIFORNIA PENAL CODE CLAIMS

NDS also misses the mark by arguing that liability for EchoStar's remaining California Penal Code claims, §§ 593d(a) and 593e(b) cannot arise from the December 2000 postings because those statutes allegedly require the existence of a device.  However, California Penal Code § 593d(a)(2) is violated when any person "**assists others in attaching**, or maintains the attachment of any unauthorized device or devices to any cable, wire, or other component of a multichannel video or information services providers system or to a cable, wire or other media, or receiver that is attached to a multichannel video or information services providers system" "for the purpose of intercepting, receiving, or using any program…"  Cal. Penal Code § 593d(a)(2) (emphasis added).  And California Penal Code § 593e(b) is violated when any person "manufactures, imports into this state, assembles, distributes, sells, offers to sell, possesses, advertises for sale or otherwise provides

and device, **any plan, or any kit for a device** … designed in whole or in part to decode, descramble, intercept, or otherwise make intelligible any encoded, scrambled, or other nonstandard signal carried by that subscription television system."   Cal. Penal Code § 593e(b) (emphasis added).   Because EchoStar's remaining California Penal Code claims, §§ 593d(a) and 593e(b) merely require "assisting others in attaching" and "any plan, or any kit for a device," the December 2000 postings should form a basis to hold NDS liable.

## IV.    CONCLUSION

For the foregoing reasons, (1) EchoStar's 17 U.S.C. § 1201(b)(1) basis for Count 2 and Counts 4, 6, 7, 11, 13, 18, and 19 should be stricken from Plaintiff's Memorandum and Contentions of Fact and Law; (2) Plaintiffs should be permitted to present its DMCA contributory copyright infringement theory; and (3) Plaintiffs should be permitted to present the December 2000 postings as a basis to hold NDS liable under California Penal Code Sections 593d(a) and 593e(b).

DATED:  April 3, 2007

Respectfully submitted,

**T. WADE WELCH & ASSOCIATES**

By:   /s/ Chad M. Hagan
Chad M. Hagan
Attorneys for Plaintiffs
ECHOSTAR SATELLITE CORPORATION,
ECHOSTAR COMMUNICATIONS
CORPORATION, ECHOSTAR
TECHNOLOGIES CORPORATION, AND
NAGRASTAR L.L.C.

1

2  Additional Counsel:

3  **T. WADE WELCH & ASSOCIATES**

4  T. Wade Welch (*pro hac vice*)
   Ross W. Wooten (*pro hac vice*)
5  David M. Noll (*pro hac vice*)
6  Joseph H. Boyle (*pro hac vice*)
   2401 Fountainview, Suite 700
7  Houston, Texas 77057
8  Telephone:  (713) 952-4334
   Facsimile:   (713) 952-4994
9

10 **DLA PIPER US LLP**
   David A. Grenardo (State Bar No. 223142)
11 Cynthia A. Ricketts (*pro hac vice*)
12 1999 Avenue of the Stars, 4th Floor
   Los Angeles, CA 90067
13 Telephone: (310) 595-3031
14 Facsimile: (310) 595-3331

15

16

17

18

19

20

21

22

23

24

25

26

27

28