T. WADE WELCH & ASSOCIATES
Chad M. Hagan (*pro hac vice*)
2401 Fountainview, Suite 700
chagan@twwlaw.com
Houston, Texas 77057
Telephone: (713) 952-4334
Facsimile: (713) 952-4994

DLA PIPER US LLP
David A. Grenardo (State Bar No. 223142)
Cynthia A. Ricketts (*pro hac vice*)
david.grenardo@dlapiper.com
cindy.ricketts@dlapiper.com
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067
Telephone: (310) 595-3031
Facsimile: (310) 595-3331

Attorneys for Plaintiffs
ECHOSTAR SATELLITE CORP., et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| ECHOSTAR SATELLITE CORP., et al.,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>NDS GROUP PLC, et al.,<br><br>    Defendants/Counterclaim Plaintiffs. | No. SA CV 03-950 DOC(JTL)<br><br>**MEMORANDUM OBJECTING TO DEFENDANTS' PROPOSED CANADIAN LAW JURY INSTRUCTION**<br><br>Date: April 20, 2008<br>Time: 12:00 p.m.<br>Dept: Judge David Carter<br>         Courtroom 9D |

Plaintiffs EchoStar Satellite L.L.C. f/k/a EchoStar Satellite Corporation, EchoStar Technologies Corporation, and NagraStar LLC (collectively, "EchoStar" or "Plaintiffs") hereby submit this Memorandum objecting to Defendants' proposed jury instruction ("Decryption of U.S. Satellite Signal in Canada"), which Defendants submitted to the Court on Friday, April 18, 2008. The proposed jury instruction misstates the law, and therefore will mislead and/or confuse the jury to Plaintiffs' significant prejudice. Moreover, the instruction is unnecessary, as it does not address any issue to be decided by the jury.

## I.  INTRODUCTION

Plaintiffs have been harmed by Defendants' unlawful circumvention of EchoStar's conditional access system, publication of Defendants' EchoStar hack, and distribution of pirated cards in the United States, among other things. Defendants attempt to defend and excuse their unlawful action by arguing that the conduct was "legal" in Canada (one of the distribution hubs). The legality of Defendants' conduct in Canada (or elsewhere in the World), however, is irrelevant. Plaintiffs sued Defendants for violations of United States and California law based on Defendants' and their agents' conduct in the United States, and conduct occurring outside of the United States that was knowingly and intentionally directed toward Plaintiffs in the United States with the intent to cause, and causing, Plaintiffs harm. Plaintiffs seek to recover their damages flowing from this unlawful conduct causing harm in the United States (*e.g.,* lost profits and actual damages resulting from the global card swap).

Defendants nonetheless propose a jury instruction that purports to state Canadian law regarding the decryption of U.S. satellite signals in Canada. Defendants' proposed instruction states:

> at all times relevant to this litigation, the decoding of an encrypted satellite signal in Canada originating in the United States was not unlawful in Canada.

Not only is Defendants' proposed instruction irrelevant, it misstates the Canadian law.

The decoding of an encrypted satellite signal in Canada originating in the United States *is unlawful* in Canada and has been unlawful since 1985. Moreover, to the extent there was any ambiguity in the law prior to 2002, any ambiguity did not exist "for all times relevant to this litigation" as Defendants represent. Instead, beginning in 2002 and continuing today, it is absolutely clear that the decoding of an encrypted satellite signal in Canada originating in the United States is expressly prohibited by Canadian law.

## II. THE DECRYPTION OF U.S. SATELLITE SIGNALS IN CANADA HAS BEEN ILLEGAL SINCE 1985.

Canada's Radiocommunications Act prohibits the unauthorized interception of signals. Radio Communications Act, R.S.C. 1985, c. R-2 (9), (10) ("9.(1) No person shall decode an encrypted subscription programming signal or encrypted network feed otherwise than under and in accordance with an authorization from the lawful distributor of the signal or feed."). However, the statute, as enacted, did not expressly address whether the interception of signals from United States satellite providers was unlawful. Instead, this prohibition was implied.

Taking advantage of this perceived ambiguity, a "grey market," centered around the sale of decoding equipment and devices that would allow Canadians to receive satellite signals from United States direct-to-home ("DTH") satellite providers ("U.S. DTH decoding systems"), grew in Canada. *Bell ExpressVu v. Rex*, 2002 S.C.C. 42, ¶ 6 [2002]. This market was possible because Canada and the United States share a "footprint," such that given the proper technological equipment and devices, Canadians can receive satellite signals from United States DTH satellite providers. *Id*. ¶ 4.

In April 2002, the Supreme Court of Canada issued an opinion resolving the perceived ambiguity and shut down this growing market. *Id,* ¶ 68. In *Bell*

**Memorandum Objecting To Defendants' Proposed Canadian Law Jury Instruction** - 3 -

*ExpressVu*, the Supreme Court expressly found that Canada's Radiocommunications Act, R.S.C. 1985, which prohibits the unauthorized decryption satellite signals, applies to U.S. satellite signals. *Id.*.

In *Bell ExpressVu*, Canadian DTH distributor Bell ExpressVu sought to enjoin the defendant from selling U.S. DTH decoding systems to Canadian. *Id*. at ¶ 6. The defendant sold U.S. DTH decoding systems to Canadian customers. To facilitate decoding of the U.S. DTH signal, the defendant also provided a U.S. mailing address for its Canadian customers and contacted the U.S. DTH on behalf of its customers, providing the customer's name, U.S. address, and credit card number so that the customer could then pay for the subscription. *Id*. ¶¶ 5-6. The Supreme Court of Canada reversed the trial court's refusal to grant the injunction, finding that Canada's Radiocommunications Act, R.S.C. 1985, prohibits the unauthorized decryption of satellite signals from United States satellite providers.

Thus, the Canadian Supreme Court's opinion in *Bell ExpressVu* makes it clear that the unauthorized decryption of satellite signals from anywhere in the world is unlawful in Canada. Specifically, the Canadian Supreme Court held that Canadians cannot decrypt or intercept U.S. DTH signals without authorization. *Id*. Incredibly, Defendants rely upon the Canadian Supreme Court's opinion in *Bell ExpressVu* to support their proposed jury instruction. Defendants' reliance upon *Bell ExpressVu* is misplaced.

Indeed, the Canadian Supreme Court was not the first court to hold that the decryption of U.S. DTH signals in Canada is illegal. In fact, as early as 1995, several Canadian Courts had so held, including, *inter alia*, the Canadian Federal Court of Appeal in 1997. *Id.* (*citing ExpressVu, Inc. v. Norsat International Inc*. (1997), [1998] 1 F.C. 245 (Fed. T.D.), aff'd (1997), 222 N.R. 213 (Fed. C.A.)).

Although *HMQ v. R. Branton*, 154 C.C.C. 3d 139, ¶ 38, which is the other case upon which Defendants rely to support their proposed jury instruction, holds that the Radiocommunications Act does not apply to U.S. DTH signals, that case is

1  inapposite.  In *HMQ*, a defendant had been criminally charged and the Court thus
2  was specifically concerned that the statute was ambiguous.  In this criminal context,
3  the Court held that the reach of the Radiocommunications Act must be narrowly
4  construed.  *HMQ*, 154 C.C.C. 3d 139, ¶ 38.  Even so, the Court acknowledged that
5  other courts had definitively held that decoding a U.S. DTH signal in Canada
6  without authorization is unlawful.  *Id*. at 21.  Therefore, it is clearly not the case, as
7  Defendants suggest, that decoding an encrypted U.S. satellite signal in Canada was
8  "not unlawful" until 2002.

9  **To the contrary, and as the Canadian Supreme Court in *Bell ExpressVu***
10  **made clear, the decoding of encrypted U.S. satellite signals in Canada has been**
11  **unlawful since 1985 when the Radiocommunications Act was enacted.**  At best,
12  the most that Defendants can say is that the law was ambiguous as to whether the
13  decoding of encrypted U.S. Satellite signals in Canada was unlawful prior to the
14  Canadian Supreme Court's pronouncement in *Bell ExpressVu* in April 2002.

15  In any event, it cannot be disputed that the decoding of encrypted U.S.
16  satellite signals in Canada was unlawful from April 2002 forward.  The conduct of
17  Defendants and/or their agents that occurred after April 2002, related to the
18  decoding of encrypted U.S. satellite signals in Canada or derived from the decoding
19  of encrypted U.S. satellite signals in Canada, thus was patently unlawful – and not
20  lawful as Defendants' proposed jury instruction represents.  As a result, it is
21  absolutely misleading and indeed untrue to state that the decoding of encrypted
22  U.S. satellite signals in Canada was not "unlawful" at all times material to the
23  conduct of Defendants and their agents as Defendants' propose in their new jury
24  instruction.  Defendants' proposed jury instruction is a clear misstatement of the
25  law.

26
27
28

### III. DEFENDANTS' PROPOSED JURY INSTRUCTION IS UNNECESSARY.

Plaintiffs do not seek to impose liability on Defendants for their violations of Canadian law. *See* EchoStar's Fifth Amended Complaint. Indeed, all of the conduct that is the basis of Plaintiffs' claims violates U.S. and California law, and it is under these U.S. and California laws that Plaintiffs seek recovery. *Id.* Thus, in addition to misstating the law, Defendants propose an instruction that is not relevant to any issue the jury will be asked to decide.

The Defendants' proposed instruction is also improper because it will mislead the jury to potentially exclude, from any award to Plaintiffs, damages that Plaintiffs have incurred as a result of Defendants' and their agents' conduct in Canada that Plaintiffs are legally entitled to recover. Plaintiffs are entitled to recover damages arising from conduct that occurred in Canada because it resulted from violations of U.S. law that occurred in the United States, and because it caused harm to Plaintiffs in the United States. *See* Plaintiff's Trial Memorandum Regarding the Geographic Parameters and Scope of Claim [Docket No. 1030]. Defendants' proposed instruction therefore will only serve to confuse and mislead the jury as to which law to apply to Defendants' and their agent's conduct. Accordingly, Plaintiffs will be prejudiced if Defendants' proposed instruction is given to the jury.

### IV. CONCLUSION

Defendants' proposed jury instruction misstates the law of Canada. It is also unnecessary and will confuse and mislead the jury as to what law to apply to Defendants' and their agents' conduct. Therefore, the Court should reject the proposed instruction and not charge this proposed instruction to the jury.

**Memorandum Objecting To Defendants' Proposed Canadian Law Jury Instruction** - 6 -

| | |
|---|---|
| 1 | DATED:  April 20, 2008 |
| 2 | Respectfully submitted, |
| 3 | **DLA PIPER US LLP** |
| 4 | |
| 5 | By:  s/Cynthia A. Ricketts |
| | Cynthia A. Ricketts |
| 6 | Attorneys for Plaintiffs |
| 7 | ECHOSTAR SATELLITE CORPORATION, ECHOSTAR COMMUNICATIONS CORPORATION, ECHOSTAR TECHNOLOGIES CORPORATION, AND NAGRASTAR L.L.C. |

Additional Counsel:

**T. WADE WELCH & ASSOCIATES**
T. Wade Welch (*pro hac vice*)
Ross W. Wooten (*pro hac vice*)
David M. Noll (*pro hac vice*)
2401 Fountainview, Suite 700
Houston, Texas 77057
Telephone:  (713) 952-4334
Facsimile:   (713) 952-4994

**DLA PIPER US LLP**
David A. Grenardo (State Bar No. 223142)
Cynthia A. Ricketts (*pro hac vice*)
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067
Telephone: (310) 595-3031
Facsimile: (310) 595-3331