T. WADE WELCH & ASSOCIATES
Chad M. Hagan (*pro hac vice*)
2401 Fountainview, Suite 700
chagan@twwlaw.com
Houston, Texas 77057
Telephone: (713) 952-4334
Facsimile: (713) 952-4994

DLA PIPER US LLP
David A. Grenardo (State Bar No. 223142)
Cynthia A. Ricketts (*pro hac vice*)
david.grenardo@dlapiper.com
cindy.ricketts@dlapiper.com
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067
Telephone: (310) 595-3031
Facsimile: (310) 595-3331

Attorneys for Plaintiffs
ECHOSTAR SATELLITE CORP., et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| ECHOSTAR SATELLITE CORP., et al.,<br><br>　　　　Plaintiffs/<br>　　　　Counterclaim<br>　　　　Defendants,<br><br>　v.<br><br>NDS GROUP PLC, et al.,<br><br>　　　　Defendants/<br>　　　　Counterclaim<br>　　　　Plaintiffs. | No. SA CV 03-950 DOC(JTL)<br><br>**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Date: May 2, 2008<br>Time: 1:00 p.m.<br>Dept: Judge David Carter<br>　　　　Courtroom 9D |

Plaintiffs' Motion For Judgment As A Matter Of Law

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Plaintiffs EchoStar Satellite L.L.C. f/k/a EchoStar Satellite Corporation, EchoStar Technologies Corporation, and NagraStar L.L.C. (collectively, "Plaintiffs") hereby move for judgment as a matter of law dismissing the counterclaim for trade secret misappropriation and affirmative defenses of failure to mitigate damages and unclean hands of Defendants NDS Group PLC and NDS Americas, Inc. (collectively, "NDS" or "Defendants").

## I. PRELIMINARY STATEMENT

Defendants' sole remaining counterclaim is their counterclaim under the California Uniform Trade Secrets Act ("CUTSA") for alleged trade secret misappropriation. In response to Plainiffs' claims, Defendants also raise two affirmative defenses: failure to mitigate damages and unclean hands. Defendants' counterclaim and unclean hands affirmative defense arise out of and are based upon the same operative facts: Plaintiffs allegedly obtained and possessed documents belonging to Defendants that contained Defendants' trade secrets. Defendants' failure to mitigate affirmative defense appears to be based on Plaintiffs' alleged delay in issuing ECMs and patches. As Defendants rest their case, their counterclaim and two affirmative defenses fail for at least the following reasons:

- Defendants' CUTSA counterclaim fails as a matter of law because Defendants have <u>not</u> offered <u>any</u> evidence from which a reasonable jury may infer that they have suffered damages as a result of Plaintiffs' alleged misappropriation of documents containing Defendants' alleged trade secrets.

- Defendants' CUTSA claim also fails because, as a matter of law, there is no basis for Defendants to request an injunction: the documents that Defendants claim Plaintiffs misappropriated are lodged with the Court and Plaintiffs do not now possess any such documents.

- Defendants' CUTSA counterclaim further fails as a matter of law as to Plaintiff EchoStar because Defendants have not offered any evidence from which a reasonable jury may infer that EchoStar ever possessed Defendants' documents.

- Defendants' CUTSA counterclaim fails as a matter of law because Defendants have <u>not</u> offered <u>any</u> evidence from which a reasonable jury may infer that Defendants undertook reasonable efforts to maintain the secrecy of the documents.

- Defendants' failure to mitigate affirmative defense fails as a matter of law because Defendants have not offered any evidence from which a reasonable jury may find the amount by which Plaintiffs could have reasonably mitigated their damages.

- Defendants' unclean hands affirmative fails as a matter of law because the alleged conduct that forms the basis of Defendants' unclean hands defense – the alleged theft of Defendants' trade secrets – is not related to Plaintiffs' claims.

- Defendants' unclean hands affirmative defense also fails as a matter of law as to Plaintiff EchoStar because Defendants have not introduced any evidence from which a reasonable jury may find that EchoStar possessed Defendants' documents, which forms the basis of Defendants' unclean hands affirmative defense.

As a result, judgment as a matter of law should be entered against Defendants dismissing their counterclaim and affirmative defenses.

## II. ARGUMENT

Judgment as a matter of law is appropriate where "a reasonable jury would not have a legally sufficient evidentiary basis" to find for a party on an issue that is essential to a claim or defense. Fed. R. Civ. Proc. 50(a). The Court is not "required to submit a question to a jury merely because some evidence has been introduced

by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  Before sending the evidence to the jury, the Court must first determine whether there is sufficient evidence for the jury to find in favor of the party with the burden of proof; if there is not, the Court should grant judgment as a matter of law. *Id.*  Applying this standard here, judgment as a matter of law in Plaintiffs' favor on Defendants' counterclaim and affirmative defenses is appropriate.

### A.  Defendants' Counterclaim For Trade Secret Misappropriation Fails As A Matter Of Law.

Defendants' CUTSA counterclaim is premised upon Plaintiffs' purported wrongful acquisition of Defendants' internal documents.  Amended Final Pretrial Conference Order at 36.  To prevail on this claim, Defendants must show that (1) Defendants owned a trade secret, (2) Plaintiffs acquired, disclosed, or used Defendants' trade secrets through improper means, and (3) Plaintiffs' actions damaged Defendants. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003) (citing Cal. Civ. Code § 3426.1); *Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996)).  Defendants have failed to present any evidence from which a reasonable jury may find that Defendants were damaged by the alleged misappropriation, or that Defendants undertook reasonable efforts to maintain the secrecy of the documents.  Defendants' CUTSA counterclaim thus fails as a matter of law.

#### 1.  Defendants have failed to establish damages.

Three separate categories of damages are contemplated under CUTSA: (1) out-of-pocket losses, (2) unjust enrichment, or (3) a reasonable royalty (where the two former measures cannot be proven).  Cal. Code Civ. Proc. § 3426.3(b).  But "[f]ailure to produce evidence of actual loss, unjust enrichment, or a reasonable

1  royalty results in the assessment of zero damages under California law." *Litton Sys.*
2  *Inc. v. Ssangyong Cement Indus. Co., Ltd.*, 107 F.3d 30, 1997 WL 59360 at *8
3  (Fed. Cir. Feb. 13, 1997).  Indeed, a claim for misappropriation of trade secrets
4  cannot be maintained where the claimant presents no evidence to allow the court to
5  calculate damages.  *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 626
6  (1992) (holding that even where liability established judgment of nonsuit properly
7  based on absence of evidence of damages under any theory of recovery).
8        In this case, Defendants have not offered any evidence to establish out-of-
9  pocket expenses or the value of the trade secrets, nor have Defendants offered any
10 evidence to support the calculation of a "reasonable royalty" for the use of the trade
11 secrets.  Defendants' counterclaim thus fails as a matter of law.[1]
12       While an injunction is an available remedy under CUTSA, Defendants have
13 failed to offer sufficient evidence to support this remedy as well.  *See* Cal. Code
14 Civ. Proc. § 3426.2.  An injunction is only available if there is something to be
15 enjoined, such as the continued improper possession and/or use of the alleged trade
16 secrets.  Cal. Code Civ. Proc. § 3426.2.  An injunction against misappropriation of
17 trade secrets should "only last as long as is necessary to preserve the rights of the
18 parties."  *American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal. App. 3d
19 1318, 1326 (1986).
20       Here, however, this time has already run—there is simply nothing left to
21 enjoin.  The party accused of the misappropriation—NagraStar— no longer has the
22 documents.  (Guggenheim Trial Testimony 04/18/08, Vol. I p. 102:10-12 (turned
23 over the CDs containing documents at issue to lawyers); Ereiser Trial Testimony
24 4/22/08 Vol. III p. 9:12-10:3 (copies given to lawyer).)  The documents were given
25 to lawyers who in turn filed them with this Court under seal.

---

[1] Defendants apparently acknowledge the lack of evidence to support a claim for damages, as Defendants have failed to propose a jury instruction or verdict form on this issue.

**Plaintiffs' Motion For Judgment As A Matter Of Law**

The Protective Order in this case already serves a similar function as an injunction.  *See* Stipulated Protective Order of November 28, 2005 (as amended). The Protective Order requires Defendants' documents to be returned to Defendants or destroyed at the end of the case.  Protective Order ¶ 22.  The parties no longer have Defendants' documents, and the lawyers cannot use Defendants' documents other than in the course of this litigation.  The Court has already ordered the lawyers to return the documents or to destroy the documents at the conclusion of the case.  *See* Protective Order ¶ 22.  Accordingly, there is nothing from which to enjoin either Plaintiff.  Defendants' request for an injunction thus is moot and fails as a matter of law.  *Hood v. Keller*, 229 Fed.Appx. 393, 398-99 (6th Cir. 2007) (denying claim for injunctive relief as moot).

With no proof of damages and no basis on which to obtain an injunction, Defendants have no claim under CUTSA as a matter of law.

### 2. Defendants have failed to establish that they undertook reasonable steps to maintain the secrecy of the documents.

To qualify as a "trade secret," the subject information must "(1) [d]erive[] independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [be] the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Cal. Civil Code § 3426.1(d); *see also Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183-84 (C.D. Cal. 2006).

Defendants have not introduced evidence from which a reasonable jury may find that Defendants took reasonable measures to keep the documents and information secret (and that the documents and information remained secret).  For instance, Defendants presented no evidence as to how the documents were stored, who had access to them, or what specific measures they took to keep the information secret, other than simply marking some "confidential" or otherwise proprietary.  Defendants have not introduced sufficient evidence from which a

reasonable jury could conclude that the documents or their contents constituted trade secrets, therefore Defendants' CUTSA counterclaim fails as a matter of law.[2]

### B. Defendants' Counterclaim For Trade Secret Misappropriation Fails As A Matter Of Law As To Plaintiff EchoStar Because Defendants Have Offered No Evidence That EchoStar Ever Possessed the Documents at Issue.

Defendants have proffered no evidence from which a reasonable jury may conclude that Plaintiff EchoStar had any involvement in the alleged misappropriation of Defendants' "trade secrets". The documents that Defendants claim contain their trade secrets and that Plaintiffs allegedly misappropriated were obtained by Giles Kaehlin (Canal+) and years later given to Alan Guggenheim and J.J. Gee, who worked for NagraStar. Indeed, the 26,000 documents, which Defendants claim are the bulk of the documents containing their trade secrets, were originally obtained by Mr. Kaehlin and later given to Mr. Ereiser; Mr. Ereiser in turn gave these documents to Mr. Gee and Mr. Guggenheim in 2005.[3] (Guggenheim Trial Testimony 04/18/08, Vol. I, p. 90:12-21, 94:22-95:4, 95:8-25, 99:12-25,

---

[2] Defendants also have failed to offer any evidence from which a reasonable jury may find that Defendants' documents or any information contained within them derived independent economic value from not being known to the public or competitors at the time Plaintiff NagraStar allegedly acquired them. While the documents have been characterized as "internal," and some are labeled "confidential" or "proprietary" (*e.g.* TR. EX. 366), Defendants have not introduced evidence from which a reasonable jury may find that the documents derive "independent economic value." A party's own classification of its information as "trade secret" does not establish that the information falls within the definition of a protectable trade secret under CUTSA. *See Am. Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1325 (1986). Nor will labeling information as a trade secret or as confidential information conclusively establish that the information fits this description. *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1430 (2003).

[3] Defendants claim that there were an additional 400 documents that Mr. Kaehlin obtained and gave to Mr. Guggenheim some time in 2001. (Guggenheim Trial Testimony 04/18/08, Vol. I p. 95:8-25.)

**Plaintiffs' Motion For Judgment As A Matter Of Law**
- 7 -

120:4-12, 131:12-14, 132:24-25; Ereiser Trial Testimony 4/22/08 Vol. II, p. 38:25-39:15, 41:21-23.)

Defendants have presented no evidence from which a reasonable jury could conclude that anyone from EchoStar acquired Defendants' "trade secret" documents or disclosed any trade secrets contained in the documents. The evidence instead is undisputed that if any party received Defendants' documents it was Plaintiff NagraStar. (Guggenheim Trial Testimony 04/18/08, Vol. I, p. 90:12-21, 94:22-95:4, 95:8-25, 99:12-25, 120:4-12, 131:12-14, 132:24-25; Ereiser Trial Testimony 4/22/08 Vol. II, p. 38:25-39:15, 41:21-23.) Thus, even if the Court finds that sufficient evidence has been presented from which a jury could reasonably find for Defendants on their CUTSA counterclaim, there still is no claim against EchoStar. Defendants' CUTSA counterclaim against Plaintiff EchoStar fails as a matter of law for this additional reason.

**C. Defendants' Affirmative Defense Of Failure To Mitigate Fails As A Matter Of Law Because Defendants Offered No Evidence Of The Amount By Which Damages Allegedly Could Have Been Mitigated.**

Defendants have raised the failure to mitigate damages affirmative defense as to all of Plaintiffs' claims against them. Amended Final Pretrial Conference Order at 41-42. Defendants have the burden of proving (1) that Plaintiffs failed to use reasonable efforts to mitigate damages, and (2) the amount by which damages would have been mitigated. *Mayer v. Multistate Legal Studies, Inc.*, 52 Cal. App. 4th 1428, 1436 (1997) (where defendant failed to carry its burden of demonstrating the amount that plaintiff could have earned if he had succeeded in obtaining comparable employment, failure to mitigate wrongful termination was not shown); *Pflingsten v. Westenhaver*, 39 Cal. 2d 12, 24 (1952) (where plaintiff established a *prima facie* measurement of damages, it was then on the defendant to show that the actual damage was less than the repair bill); *Stillwell v. R.C.A. Mfg. Co.*, 62 Cal. App. 2d 347 (1944) (though burden was on defendants to show that the plaintiff's

loss of profits had been diminished by the operation of a new business, defendants failed to show the amount of profit, if any, made by the new business); *City of Oakland v. Pac. Gas & Elec. Co.*, 47 Cal. App. 2d 444, 450 (1941) ("It is incumbent upon the party alleging injury to prove the amount of damages[, but] if the damages proven [can] be reduced proportionately, that burden rest[s] upon [defendant].").

In *Mayer*, an action for wrongful termination, the defendant employer argued that the plaintiff had failed to mitigate his damages by seeking employment after he was fired. 52 Cal. App. 4th at 1432. At trial, the defendant offered the testimony of an expert witness, a vocational rehabilitation counselor, who criticized the plaintiff's efforts to find new employment. *Id.* Neither the expert nor any other witness, however, provided evidence of the specific *amount* that the plaintiff could have earned if he had used reasonable efforts to obtain comparable employment. *Id.* The only specific evidence presented on the subject was the expert's testimony, based on want-ads, that a manager at a drug store could make between $50,000 and $70,000 after three to five years of employment. *Id.* at 1436-37. The plaintiff was a sales manager for BarPassers. *Id.* at 1431. The Court held that the expert's generalized testimony failed to satisfy the defendant's burden of proving the amount by which the plaintiff's damages might have been mitigated. *Id.* at 1436-37. Thus, as a matter of law, the Court refused to reduce plaintiff's damages on the basis of failure to mitigate. *Id.*

Here, Defendants have offered no evidence as to the *amount* Plaintiffs' damages might have been limited had they been able to reasonably mitigate beyond the actions Plaintiffs took to protect themselves from further harm. Like the defendant in *Mayer*, Defendants offered the generalized testimony of their expert as to how Plaintiffs should have mitigated their damages, but did not introduce evidence from any witness showing the *amount* by which Plaintiffs' damages would have been mitigated. Specifically, Defendants' expert Nigel Jones criticized

Plaintiffs' response time in providing patches and ECMs, however there was no testimony from any witness regarding the amount by which Plaintiffs' damages might have been reduced had they responded differently. (Jones Trial Testimony 04/29/08, Vol. III, p. 43:25-47:2). Therefore, as a matter of law, Defendants have not met their burden of proving their failure to mitigate affirmative defense. *Lasley v. Moss*, 500 F.3d 586, 590 (7th Cir. 2007) (affirming judgment as a matter of law in favor of plaintiff on defendant's failure to mitigate defense where defendant did not meet burden of proof).

Additionally, Defendants have not introduced any evidence to establish that Plaintiffs could have decreased in any way the costs associated with the card swap or the loss associated with Defendants' usurping of revenue from the lost DirecTV contract. Although Nigel Jones testified that he felt the card swap was unnecessary (which is controverted by Alan Guggenheim's testimony), assuming the card swap was necessary, there is no testimony that Plaintiffs could have accomplished the card swap at a lower cost. Moreover, though Mr. Jones testified that he felt the patch/ECM was tardy, there is no evidence that if Plaintiffs had pushed out the patch/ECM earlier, the card swap would have been unnecessary and/or less expensive. Finally, none of this testimony bears on Defendants' revenue from the DirecTV contract, since Defendants' usurped that contract before Plaintiffs' began their reasonable protective measures.

**D.   Defendants' Affirmative Defense of Unclean Hands Fails As A Matter Of Law Because The Alleged Conduct That Forms The Basis Of Defendants' Unclean Hands Defense Is Not Directly Related To Plaintiffs' Claims.**

Under both California and federal law, unclean hands is an equitable doctrine that bars a plaintiff from obtaining relief only when the plaintiff has engaged in inequitable conduct related to the claims asserted against the defendant. *See Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 876-77 (9th Cir. 2000); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997); *Burton v. Sosinsky*, 203 Cal.

App. 3d 562, 573 (1988). The affirmative defense applies <u>only</u> if the relationship between the plaintiff's alleged misconduct and the plaintiff's harm is direct, not incidental. *California Satellite Systems, Inc. v. Nichols*, 170 Cal. App. 3d 56, 70 (1985); *Blaine v. Doctor's Co.,* 222 Cal. App. 2d 1048, 1063 (1990); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 621 (1992) ("The trial of the issue relating to clean hands cannot be distorted into a proceeding to try the general morals of the parties.") (quoting *Boericke v. Weise*, 68 Cal. App. 2d 407, 419 (1945)); *Ellenburg v Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) ("What is material is not that the plaintiff's hands are dirty, but that … the manner of dirtying renders inequitable the assertion of such rights against the defendants."). A plaintiff's claims cannot be barred where the plaintiff's alleged misconduct is independent of the plaintiff's injury. *Fibreboard Paper Products Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 729 (1964). The unclean hands defense is particularly rare in defense of a copyright infringement claim, and then only when the "plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action" and "use of … undercover investigations and the like to ferret out infringement is routine and provides no defense. 4-13 Nimmer on Copyrights § 13.09[B].

In *Fibreboard,* the Court held that the unclean hands defense did not apply because there was no relationship between plaintiff's alleged misconduct and plaintiff's injury. 227 Cal. App. 2d at 729. There, the plaintiff employer sued for damages resulting from defendants' tortious acts, including assault, committed while defendants were picketing plaintiff's business. *Id.* at 686-87. The defendants attempted to assert the unclean hands affirmative defense in an amended answer, alleging that the plaintiff had breached a collective bargaining agreement and had made misrepresentations about negotiating a new agreement. *Id.* at 687. The court denied the amendment, finding that the asserted unclean conduct was not directly related to the matter before it because the tortious acts perpetrated on plaintiff were

"independent of the transaction arising from the alleged breach of contract and misrepresentations." *Fibreboard*, 227 Cal. App. 2d at 729. The defendants' assault and other tortious actions were not somehow justified simply because the plaintiff had allegedly breached an agreement. *Id.*

In *California Satellite Systems*, the court similarly rejected the defendants' unclean hands affirmative defense. 170 Cal. App. 3d at 70. There the plaintiff distributor moved for a preliminary injunction against the defendant pirates for facilitating the unauthorized viewing of the distributor's television programs. *Id.* at 62. Plaintiff held an exclusive license to broadcast HBO via microwave antenna in the Sacramento area. *Id.* Defendants were selling devices designed to intercept and decode plaintiff's signal. *Id.* Plaintiff moved for an injunction under the Communications Act, 47 U.S.C. § 605 (under which EchoStar here brings a cause of action). As a defense, the defendants claimed that the plaintiff was barred from obtaining equitable relief because of its alleged operation of an unlicensed transmitter and other allegedly unlicensed activity in servicing electronic equipment. *Id.* at 70. However, in granting the injunction, the court found that the unlicensed activity alleged by the defendants was not "sufficiently related to the subject of the action to justify the denial of relief." *California Satellite Systems*, 170 Cal. App. 3d at 70. The plaintiff's alleged wrongs had "no direct bearing on the equitable relationship between the parties." *Id.*

The conduct that may form the basis of an unclean hands affirmative defense may also arise out of the same transaction. For instance, the court in *Unilogic* held that a jury properly considered a defendant's unclean hands affirmative defense where the defendant's alleged misconduct and plaintiff's alleged injury occurred in the same transaction. 10 Cal. App 4th at 621. After the failure of a joint development project between the parties to develop prototypes of a personal computer, plaintiff sued for conversion alleging that defendant had not paid for plaintiff's development efforts and was wrongfully profiting from them. Defendant

**Plaintiffs' Motion For Judgment As A Matter Of Law**

alleged that plaintiff had misrepresented its financial condition to defendant to induce it to enter into the project and that it had breached obligations of confidentiality under the joint development agreement. *Id.* at 617. The jury found for plaintiff on the conversion claim, but awarded no damages based on defendant's unclean hands defense. *Id.* The Court upheld the jury's verdict, finding that defendant's conversion and plaintiff's misconduct occurred in the same transaction that formed the subject of the litigation—the joint development project. *Id.* at 621.

In contrast, in a case directly on point, a California District Court held that a defense of unclean hands stemming from purported trade secret misappropriation was not related to the plaintiff's claim that defendants knowingly enforced invalid or unenforceable patents. *Regents of University of California v. Micro Therapeutics, Inc.*, No. C 03-05669 JW, 2006 WL 449134 at *2 (N.D. Cal. Feb. 22, 2006). In *Micro Therapeutics*, the defendants[4] sought leave to amend their answer on the basis of newly discovered evidence. *Id.* at *1. Specifically, the defendants alleged that "highly confidential … company files" full of "key strategic plans" were in plaintiff's possession. *Id.* The defendants asserted that a former employee "knowingly" took this "trade secret information" and gave the information to plaintiff's "highest levels of management." *Id.* The defendants thus sought to amend their answer to add counterclaims for trade secret misappropriation and unfair trade practices, and to add an unclean hands affirmative defense. *Id.* In denying the defendants' request for leave to add the unclean hands affirmative defense, the court found that the defendants' allegation of trade secret misappropriation, upon which the unclean hands affirmative defense was based, was insufficiently related to plaintiff's claim that defendants acted inequitably in procuring patents. *Id.* at *2.

---

[4] The relevant parties in *Micro Therapeutics* are actually a third party plaintiff and third party defendants, but for simplicity's sake will be referred to as "plaintiff" and "defendants" respectively.

**Plaintiffs' Motion For Judgment As A Matter Of Law**

1    Here, the only conduct that forms the basis of Defendants' unclean hands
2  defense is Plaintiffs' alleged misappropriation of trade secrets by Plaintiffs. *See*
3  Amended Final Pretrial Conference Order at 40-41 ("NDS will present evidence
4  that on two separate occasions, Plaintiffs knowingly obtained misappropriated
5  internal NDS documents that included attorney-client privileged communications,
6  proprietary and trade secret technical and business strategy memos, customer
7  proposals, and highly sensitive and confidential operational security documents.").
8  But the alleged misappropriation of Plaintiffs' trade secrets does not relate in any
9  way to Plaintiffs' claims that Defendants hacked Plaintiffs' conditional access
10 system, and then used that information to create and distribute pirated smart cards
11 and then posted the code on the Internet. The alleged misconduct is independent of
12 Plaintiffs' injuries.
13   Defendants did not hack Plaintiffs' system due to the alleged
14 misappropriation of Defendants' trade secrets. Rather, Defendants assert that
15 Plaintiffs are precluded from recovery because Plaintiff NagraStar allegedly
16 misappropriated some documents that contain alleged trade secrets, several years
17 after Defendants compromised Plaintiffs' security system in an attempt to destroy
18 Plaintiffs' competitive advantage. (Ereiser Trial Testimony 4/22/08 Vol. II, p.
19 38:25-39:15; Guggenheim Trial Testimony 04/18/08, Vol. I p.99:12-25, 131:12-14,
20 132:24-25 (received documents from Ereiser in 2005).) To the extent the alleged
21 misappropriation occurred at all, the alleged misappropriation is an entirely separate
22 transaction from that of Defendants' conduct that forms the basis of Plaintiffs'
23 claims. Moreover, there is no direct relationship between Plaintiffs' injuries and
24 the alleged misappropriation of Defendants' purported trade secrets. Thus, as a
25 matter of law, there is no basis for Defendants' unclean hands affirmative defense.
26 *See Micro Therapeutics, Inc.*, No. C 03-05669 JW, 2006 WL 449134 at *2 (holding
27 allegation of trade secret misappropriation upon which unclean hands affirmative
28

**Plaintiffs' Motion For Judgment As A Matter Of Law**
- 14 -

defense based insufficiently related to the plaintiff's claim that the defendants acted inequitably in procuring patents).

Additionally, Defendants have not introduced any evidence to establish that Plaintiffs could have decreased in any way the costs associated with the card swap or the loss associated with Defendants' usurping of revenue from the lost DirecTV contract. Although Nigel Jones testified that he felt the card swap was unnecessary (which is controverted by Alan Guggenheim's testimony), assuming the card swap was necessary, there is no testimony that Plaintiffs could have accomplished the card swap at a lower cost. Moreover, though Mr. Jones testified that he felt the patch/ECM was tardy, there is no evidence that if Plaintiffs had pushed out the patch/ECM earlier, the card swap would have been unnecessary and/or less expensive. Finally, none of this testimony bears on Defendants' revenue from the DirecTV contract, since Defendants' usurped that contract before Plaintiffs' began their reasonable protective measures. Therefore, as a matter of law, Defendants have not even established that Plaintiffs failed to undertake reasonable efforts to mitigate the damages related to the card swap and loss of revenue associated with the DirecTV contract.

### E. Defendants' Affirmative Defense of Unclean Hands Fails As A Matter Of Law As To Plaintiff EchoStar Because Defendants Have Offered No Evidence That EchoStar Ever Possessed The Documents At Issue.

Even if this Court finds the alleged misappropriation of Defendants' trade secrets may be a proper basis for Defendants' unclean hands affirmative defense, there has been no evidence that Plaintiff EchoStar had any involvement in the alleged misappropriation. According to the evidence presented, the documents that Defendants claim are their trade secrets were obtained by Gilles Kaehlin (Canal+) and years later given to Alan Guggenheim and J.J. Gee, who worked for NagraStar. As stated above, the 26,000 documents, which Defendants claim are the bulk of the documents containing their trade secrets, were originally obtained by Mr. Kaehlin

and later given to Mr. Ereiser; Mr. Ereiser in turn gave these documents to Mr. Gee and Mr. Guggenheim in 2005 – more than four (4) years after the December 2000 postings.[5] (Guggenheim Trial Testimony 04/18/08, Vol. I, p. 90:12-21, 94:22-95:4, 95:8-25, 99:12-25, 120:4-12, 131:12-14, 132:24-25; Ereiser Trial Testimony 4/22/08 Vol. II, p. 38:25-39:15, 41:21-23.)

There has been no evidence presented that anyone from EchoStar received these documents, was involved in obtaining the documents or was given the documents. Thus, there is no evidence from which a reasonable jury may find that Plaintiff EchoStar engaged in any conduct to support Defendants' unclean clean hands affirmative defense as to it. Defendants' unclean hands affirmative defense thus fails as a matter of law as to Plaintiff EchoStar for this additional reason.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that judgment as a matter of law be entered on Defendants' counterclaim for trade secret misappropriation under CUTSA and their affirmative defenses of failure to mitigate and unclean hands.

DATED: May 2, 2008

Respectfully submitted,

**DLA PIPER US LLP**

By: s/Cynthia A. Ricketts
Cynthia A. Ricketts
Attorneys for Plaintiffs
ECHOSTAR SATELLITE CORPORATION,
ECHOSTAR COMMUNICATIONS
CORPORATION, ECHOSTAR TECHNOLOGIES
CORPORATION, AND NAGRASTAR L.L.C.

---

[5] Defendants claim that there were an additional 400 documents that Mr. Kaehlin obtained and gave to Mr. Guggenheim some time in 2001. (Guggenheim Trial Testimony 04/18/08, Vol. I p. 95:8-25.)

Additional Counsel:

**T. WADE WELCH & ASSOCIATES**
T. Wade Welch (*pro hac vice*)
David M. Noll (*pro hac vice*)
2401 Fountainview, Suite 700
Houston, Texas 77057
Telephone:  (713) 952-4334
Facsimile:   (713) 952-4994

**DLA PIPER US LLP**
David A. Grenardo (State Bar No. 223142)
Cynthia A. Ricketts (*pro hac vice*)
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067
Telephone: (310) 595-3031
Facsimile: (310) 595-3331