1    DARIN W. SNYDER (S.B. #136003) – dsnyder@omm.com
     DAVID R. EBERHART (S.B. #195474) – deberhart@omm.com
2    O'MELVENY & MYERS LLP
     Two Embarcadero Center, Suite 2800
3    San Francisco, CA  94111-3305
     Telephone:  (415) 984-8700
4    Facsimile:   (415) 984-8701

5    RICHARD L. STONE (S.B. #110022) – rlstone@hhlaw.com
     KENNETH D. KLEIN (S.B. #85231) – kdklein@hhlaw.com
6    HOGAN & HARTSON L.L.P.
     1999 Avenue of the Stars, Suite 1400
7    Los Angeles, California 90067
     Telephone:  (310) 785-4600
8    Facsimile:   (310) 785-4601

9    Attorneys for Defendants
     NDS GROUP PLC and
10   NDS AMERICAS, INC.

11                   **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13                       **SOUTHERN DIVISION**

14

15

16   ECHOSTAR SATELLITE CORP.,          Case No. SA CV 03-950 DOC(JTLx)
     *et al.*,
                                        **NDS'S NOTICE OF MOTION AND**
17                 Plaintiffs,          **MOTION TO CLARIFY**
                                        **PERMANENT INJUNCTION;**
18        v.                            **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT**
19   NDS GROUP PLC, *et al.*,           **THEREOF**

20                 Defendants.          Date:    November 17, 2008
                                        Time:    8:30 a.m.
21                                      Place:   Courtroom 9D
                                        Judge:   Hon. David O. Carter
22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 17, 2008, at 8:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 9D of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Defendants NDS Group PLC and NDS Americas, Inc. (collectively, "NDS") will and hereby do move pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for clarification of the Permanent Injunction issued by the Court on October 15, 2008. The motion is based on this notice, the accompanying memorandum of points and authorities, all other papers on file with the Court, oral argument, and such other matters as may be presented in connection with the hearing.

Dated:          October 24, 2008

O'MELVENY & MYERS LLP

By: *Darin W. Snyder*
     DARIN W. SNYDER

Attorneys for Defendant
NDS GROUP PLC, NDS AMERICAS, INC.

NDS MOTION TO CLARIFY INJUNCTION
– SA CV 03-950 DOC(JTLx)

1                                    **INTRODUCTION**

2           NDS is, and always has been, committed to combating satellite television

3    piracy.  As NDS demonstrated at trial, it carries out this mandate in large part by

4    working with law enforcement, cooperating with other satellite television providers,

5    and pursuing civil litigation against suspected pirates.  These activities are critical

6    to maintaining the security of NDS's conditional access system ("CAS"), which,

7    the Court has observed, "is an important factor in remaining competitive" in the

8    satellite television business.  Importantly, NDS's security operations also contribute

9    to fighting piracy in general, which reduces the financial burden borne by law

10   enforcement agencies and other satellite providers at the local, national, and

11   international levels.

12          NDS presumes that the permanent injunction entered by the Court—which

13   was narrowly tailored to address one type of "security testing"—was not intended

14   to preclude operations designed to combat piracy.  As currently written, however,

15   the permanent injunction inadvertently appears to restrict NDS's ability, for

16   example, to obtain and analyze EchoStar-related piracy devices during the course of

17   an investigation done in conjunction with a law enforcement agency.  Similarly, if

18   NDS were to file a lawsuit against a suspected satellite pirate and obtain any

19   EchoStar-related piracy devices as a result thereof, NDS and its attorneys might be

20   deemed to violate the permanent injunction.

21          NDS has no intention of unlawfully procuring any device that can gain

22   unauthorized access to EchoStar's satellite signal or assisting anyone who intends

23   to intercept EchoStar's signal.  Because of its ongoing security operations,

24   however, NDS may come into possession of such piracy devices.  NDS also may

25   need to conduct preliminary analyses of these devices to determine (i) whether the

26   devices are in fact piracy devices and (ii) whether the devices are intended to

27   compromise NDS's (versus some other provider's) CAS.

28          Out of an abundance of caution, therefore, NDS respectfully requests that the

                                             1            NDS MOTION TO CLARIFY INJUNCTION
                                                                – SA CV 03-950 DOC(JTLx)

1   Court clarify the permanent injunction (a) to permit NDS to possess and analyze

2   pirate devices in connection with law enforcement investigations or anti-piracy civil

3   litigation efforts; and (b) to prohibit only the knowing and willful possession of an

4   EchoStar piracy device.  NDS believes that these clarifications are consistent with

5   the letter and spirit of the Court's Findings of Fact and Conclusions of Law and

6   also comply with relevant federal and state law.

7                                          **BACKGROUND**

8          After a four week trial, a unanimous jury confirmed that NDS was not

9   responsible for the Nipper Clauz posting.  (*See* Verdict Form, May 15, 2008, at 1-2,

10  4, 6-7 (docket #1108-2).)  The jury also found that NDS had not acted with

11  oppression, fraud, malice, or recklessness towards EchoStar, and that NDS had not

12  engaged in any conspiracy to distribute pirate EchoStar access cards.  (*See id*.)  The

13  jury, moreover, rejected EchoStar's request for over a billion dollars in actual,

14  treble, and punitive damages.  (*See id*.)  The jury awarded minimal damages to

15  EchoStar, and it gave that modest award only because of a technical violation of the

16  law related to a one-time security test conducted by one of NDS's former

17  employees in November 2000, known as the P1 test.  (*See id*. at 3-5.)  Notably, the

18  P1 test was never pled in EchoStar's complaint and in fact, EchoStar now asserts

19  that it never contended that NDS should be held liable for it.  (*See* Hearing Tr.,

20  10/9/08, at 7:11-14, 17:14-15.)

21         Following trial, the Court found that NDS violated Section 17200 as a result

22  of the P1 test.  (Findings of Fact and Conclusions of Law, October 15, 2008

23  ("FOF/COL"), at 9:26-10:3.)  The Court awarded EchoStar limited restitution.  (*Id*.

24  at 15:15-19.)  But the Court confirmed that it was clear that the "jury rejected

25  EchoStar's theory that NDS was responsible for the December 2000 internet

26  posting."  (*Id*. at 10:19-23.)  The Court also rejected Plaintiffs' demand for

27  restitutionary relief in the amount of $94.6 million.  (*Id*. at 10:7-15:7.)  And the

28  Court rejected EchoStar's request for sweeping injunctive relief, in part because

1   EchoStar's CEO, Charles Ergen, admitted to conducting a similar test relating to

2   DirecTV's CAS.  (*See id*. 3:14-17, 16:6-14; *see generally* Permanent Injunction,

3   October 15, 2008 (docket #1135).)

4        Instead, the Court determined that NDS should be enjoined only for the

5   "conduct found by the jury."  (FOF/COL, at 16:13-14.)  The Court thus issued a

6   permanent injunction that prohibits NDS, several related entities and individuals

7   (including its "consultants, agents, and attorneys"), and "anyone else with notice of

8   th[e] Order" from:

- "Intercepting or receiving, anywhere in the United States, or assisting
  anyone in the United States, in intercepting or receiving, EchoStar's
  satellite television signal *without authorization*;"

- "In the State of California, for the purpose of intercepting or using
  EchoStar's signal, making an unauthorized connection to EchoStar's
  satellite television system, connecting or assisting another in connecting
  an *unauthorized device* to EchoStar's satellite television system, making
  *unauthorized modifications* to an unauthorized device, or obtaining and
  using an *unauthorized device* to gain access to EchoStar's signal;" and

- "Manufacturing, *assembling*, or *possessing* a device, in the State of
  California, designed to decode EchoStar's signal *without authorization*."

20   (*See* Permanent Injunction, October 15, 2008, at 3:4-18 (emphases added) (docket

21   #1134).)

22                              **ARGUMENT**

23        The Court has inherent authority to modify or clarify its own injunction.  *See*

24   Fed. R. Civ. P. Rule 60(b)(6) (court may modify its orders for any reason "that

25   justifies relief"); *see also Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945);

26   *Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 374

27   (S.D.N.Y. 1998) (court may 'issue an order clarifying the scope of an injunction in

28   order to facilitate compliance with the order and to prevent 'unwitting contempt.'").

1   NDS respectfully requests that the Court exercise its discretion here to permit NDS

2   to continue to engage in security operations.

3   **I.      SECURITY OPERATIONS RELATING TO LAW ENFORCEMENT**

4   **AND ANTI-PIRACY CIVIL LITIGATION EFFORTS SHOULD NOT**

5   **BE PROHIBITED UNDER THE PERMANENT INJUNCTION**

6          As the Court recognized in the FOF/COL, NDS should be enjoined only

7   from engaging in the specific type of conduct found unlawful by the jury—*i.e.*, the

8   P1 test.  (FOF/COL, at 16:4-14.)  The permanent injunction, however, appears to

9   prohibit a broader range of security operations, such as NDS's cooperation with law

10  enforcement agencies and other satellite television providers and NDS's anti-piracy

11  civil litigation efforts.  These operations contribute to anti-piracy efforts across the

12  globe and also help to maintain the security of not only NDS's CAS, but other

13  provider's CASs.  (*See* Peled Trial Tr., 5/6/08, Vol. 3 at 38:23-39:23.)

14         As the evidence at trial demonstrated, law enforcement agencies coordinate

15  with NDS to investigate and prosecute suspected satellite pirates and distributors.

16  (FOF/COL, at 3:18-22; *see also*, *e.g.*, Norris Trial Tr., 4/17/08, Vol. 2 at 17:8-23:7;

17  Hasak Trial Tr., 4/30/08, Vol. 4 at 57:5-15.)  As part of NDS's cooperation with

18  these law enforcement agencies, NDS obtains or receives for analysis pirate

19  devices, some of which may—unbeknownst to NDS—be intended for piracy of

20  other satellite signals, including EchoStar's.  NDS also engages in lawful

21  undercover operations as part of its anti-piracy efforts.  (FOF/COL, at 3:18-22.)

22  While the focus of NDS's security operations is its own CAS, satellite piracy

23  investigations often implicate several providers' CASs, including EchoStar's.  This

24  concern is not trivial.  As NDS showed at trial, it helped to secure indictments of

25  several suspected satellite pirates (including EchoStar's paid informants, Ron

26  Ereiser, Martin Mullen, and Reggie Scullion), some of whom were involved in both

27  EchoStar and DirecTV piracy.  (*See*, *e.g.*, Norris Trial Tr., 4/17/08, Vol. 2 at 47:14-

28  55:3; Trial Ex. 1124.)  But to the extent that NDS were to assist law enforcement

NDS MOTION TO CLARIFY INJUNCTION
                                                    – SA CV 03-950 DOC(JTLx)

1    agencies in obtaining and analyzing equipment designed to intercept EchoStar's

2    signal, NDS arguably would be in violation of the literal terms of the court's

3    injunction.

4         Similarly, NDS's anti-piracy civil litigation efforts will be impacted by the

5    permanent injunction.  The Court's order prohibits NDS and its "consultants,

6    agents, [and] attorneys" from, among other things, possessing EchoStar piracy

7    devices.  While, again, NDS and its attorneys are concerned primarily with piracy

8    of NDS's CAS, satellite pirates often are involved in piracy of multiple satellite

9    broadcasting systems.  (*E.g.*, Maldonado Trial Tr., 5/1/08, Vol. 4 at 8:19-9:11;

10   Dionisi Trial Tr., 4/22/08, Vol. 4 at 42:5-43:2; Ereiser Trial Tr., 4/22/08, Vol. 3 at

11   65:6-15; Gee Trial Tr., 4/24/08, Vol. 4 at 24:3-17 (Charles Pearlman).)  Thus, NDS,

12   its attorneys, and any of its experts could violate the literal terms of the permanent

13   injunction if any of them obtained or analyzed EchoStar piracy devices if they were

14   produced, for example, in response to a subpoena issued in civil litigation.

15        This proposed clarification is consistent with federal law.  Section 605(a) of

16   the Communications Act expressly permits signal interception when done "in

17   response to a subpena [*sic*] issued by a court of competent jurisdiction, or … on

18   demand of other lawful authority."  47 U.S.C. § 605(a).  While the California Penal

19   Code does not appear to have an equivalent provision, one can reasonably assume

20   that otherwise unlawful conduct done pursuant to court order or in connection with

21   law enforcement activities would be deemed proper.

22        NDS requests, therefore, that the Court clarify that NDS's actions in

23   connection with law enforcement activities and anti-piracy civil litigation efforts do

24   not violate the permanent injunction.

25   **II.   THE INJUNCTION SHOULD PROHIBIT ONLY KNOWING AND**

26   **      WILLFUL CONDUCT**

27        The permanent injunction also appears inadvertently to omit a *scienter*

28   requirement relating to the prohibited conduct.  For example, paragraph 2 of the

1   permanent injunction prohibits, among other things, unauthorized connection to

2   EchoStar's CAS, modification of an authorized device, or using an unauthorized

3   device to gain access to EchoStar's signal.  (*See* Permanent Injunction, at 3:12-16.)

4   This provision presumably is based on Section 593d(a) of the California Penal

5   Code.  That section of the Penal Code, however, expressly states that prohibited

6   conduct is unlawful only when done "[k]nowingly and willfully."  Similarly,

7   paragraph 3 of the permanent injunction prohibits, among other things, possession

8   of device designed to pirate EchoStar's signal.  (*See* Permanent Injunction, at 3:17-

9   18.)  This provision presumably is based on Section 593e(b) of the California Penal

10   Code, which also requires "knowing[ ] and willful[ ]" intent.

11          NDS has no intention of engaging in any conduct prohibited by the

12   injunction.  At the same time, some of the piracy devices that NDS may obtain in

13   connection with its own anti-piracy efforts or that are provided by law enforcement

14   for testing potentially could be programmed for EchoStar piracy.  But without a

15   *scienter* requirement, the injunction would punish even the ***unknowing*** or

16   ***unintentional*** possession of any device that was programmed to decode EchoStar's

17   satellite signal.  Again, this is not a trivial matter.  Law enforcement, for example,

18   sometimes provides NDS with devices to determine whether they are legitimate or

19   pirate devices.  Only by testing the devices can NDS determine whether they are

20   pirate devices and for what satellite broadcasting system.  (*See* Norris Trial Tr.,

21   4/17/08, Vol. 2 at 21:18-22:3; Peled Trial Tr., 5/6/08, Vol. 3 at 18:19-19:2.)  One

22   example of this issue is "free-to-air" ("FTA") piracy, which affects both NDS's and

23   EchoStar's CASs.  (*See* Gee Trial Tr., 4/25/08, Vol. 1 at 58:17-59:3.)  If law

24   enforcement provided NDS with an FTA piracy device that, unknown to both law

25   enforcement and NDS, was programmed to intercept EchoStar's signal, NDS would

26   be in violation of the injunction.

27          NDS respectfully requests, therefore, that the Court clarify the permanent

28   injunction to prohibit only "knowing and willful" conduct.

6          NDS MOTION TO CLARIFY INJUNCTION
– SA CV 03-950 DOC(JTLx)

1

**CONCLUSION**

2        For the reasons stated above, the Court should grant NDS's motion for

3    clarification of the permanent injunction.  Specifically, NDS requests that the Court

4    clarify that (1) NDS's actions in connection with law enforcement activities and

5    anti-piracy civil litigation efforts do not violate the permanent injunction and (2) the

6    permanent injunction applies only to "knowing and willful" conduct.

7

8    Dated:   October 24, 2008                 DARIN W. SNYDER
                                               DAVID R. EBERHART
9                                              O'MELVENY & MYERS LLP

10
                                               By: *Darin W. Snyder*
11                                                 DARIN W. SNYDER

12                                             Attorneys for Defendants NDS
                                               GROUP PLC and NDS AMERICAS,
13                                             INC.

14   SF1:731698.7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7                          NDS MOTION TO CLARIFY INJUNCTION
                                 – SA CV 03-950 DOC(JTLx)