O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. SACV 03-950 DOC(JTLx)                                   Date: December 4, 2008

Title: ECHOSTAR SATELLITE CORP., ET AL. V. NDS GROUP PLC, ET AL.

---

DOCKET ENTRY

    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]

                                        Date:_____  Deputy Clerk: _____

---

PRESENT:

## THE HONORABLE DAVID O. CARTER, JUDGE

    Kristee Hopkins                          Not Present
Courtroom Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

      NONE PRESENT                      NONE PRESENT

---

PROCEEDING (IN CHAMBERS): GRANTING, IN PART, MOTION TO CLARIFY PERMANENT INJUNCTION AND GRANTING, IN PART, MOTIONS FOR ATTORNEY'S FEES

       Before the Court is Defendants NDS Group PLC and NDS Americas, Inc.'s (collectively, "Defendants") Motion to Clarify Permanent Injunction, Defendant's Motion for Attorney's Fees, and Plaintiff Echostar Satellite Corporation's Motion for Attorney's Fees (the "Motions"). The Court finds these matters appropriate for decision without oral argument. FED. R. CIV. P. 78; Local R. 7-15. After reviewing the moving and responsive papers, and for the reasons set forth below, the Court hereby GRANTS, in part, the Motion to Clarify Permanent Injunction and GRANTS, in part, both Defendants' and Plaintiff's Motion for Attorney's Fees.

## I. BACKGROUND

MINUTES FORM 11 DOC                       Initials of Deputy Clerk _kh_
CIVIL - GEN                                 Page 1 of 12

Plaintiff Echostar Satellite Corporation ("Echostar")[1] and DirecTV are the largest television providers in the United States.  During the relevant time period, NagraStar, a joint venture with the Kudelski Group, provided for Echostar's security through the use of encryption technology and corresponding "SmartCards," which consumers used to decrypt the Echostar signal.  Similarly, Defendant NDS Group PLC's ("NDS")[2] provided for DirecTV's security, also through the use of SmartCards.

The following is a brief summary of the events leading up to this lawsuit.  In the late 1990's, NDS suffered substantial piracy of its SmartCards, prompting it to hire a renowned hacker, Christopher Tarnovsky ("Tarnovsky"), to combat piracy.  Two NDS employees, David Mordinson ("Mordinson") and Zvi Shkedy ("Shkedy"), then separately worked to reverse engineer an Echostar SmartCard – the ROM 3 Smart Card (which contained DNASP-II encryption).  Mordinson and Shkedy then compiled a report on the vulnerabilities of the ROM 3 SmartCard (the "Headend Report").

In November of 2000, Tarnovsky saw postings on the Internet which stated that an individual could reprogram DirecTV SmartCards containing DNASP-II encryption in order to access Echostar satellite television programming.  Tarnovsky then engaged in the "P1 test," wherein he tested the claims on these websites in the presence of his supervisor, John Norris.  In December 2000, an unknown person, using an alias, posted methodology for reverse engineering the Echostar SmartCard on the Internet (the "December 2000 Internet Posting").  As a result, Echostar replaced all of their SmartCards containing DNASP-II encryption (replacing it with DNASP-III encryption), at a cost of $94,638,636.10.

Echostar then brought the instant lawsuit, alleging that NDS was responsible for the December 2000 Internet Posting and, by extension, for the card swap.  More specifically, Echostar submitted the following claims to the jury:  NDS violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§1201(a)(1)(A) and 1201(a)(2); the Communications Act ("Comm. Act"), 47 U.S.C. § 605(a); California Penal Code ("CPC") §§ 593(d) and 593e(b); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  Echostar also raised one equitable claim, decided by this Court, for unfair or unlawful business practice under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code ("CBPC") § 17200 *et seq.*  Finally, NDS raised a counterclaim under the California Uniform Trade Secrets Act, ("CUTSA"), California Civil Code § 3426.

After a four-week jury trial, the jury found that NDS was not responsible for the

---

[1]Echostar is the principal plaintiff in this matter.  Accordingly, where appropriate, the Court refers to plaintiffs collectively as "Echostar."

[2] NDS is the principal defendant in this matter.  Accordingly, where appropriate, the Court refers to defendants collectively as "NDS."

December 2000 Internet Posting; had not acted with oppression, fraud or malice; and had not engaged in conspiracy.  The jury found that NDS had, however, violated three of the six aforementioned federal statutes – the Comm. Act and CPC §§ 593(d) and 593e(b) – due to NDS's unauthorized interception of Echostar's signal.  The jury then awarded Echostar actual damages in the amount of $45.69 and the minimum statutory damages of a total of $1,500.  The jury ruled against NDS on its counterclaim against Echostar, finding that Echostar did not violate CUTSA.

This Court further held that – because the jury found that NDS's conduct violated the Comm. Act and CPC §§ 593(d) and 593e(b) – NDS's conduct also constituted an "unlawful" business practice under CBPC § 17200.  As a result, this Court (1) held that Echostar was entitled to restitution for the retail price of the programming that Tarnovsky gained access to, less the cost of his subscription and (2) set forth the injunction that is at issue in this motion (the "Injunction").

## II. LEGAL STANDARD

### A. CLARIFYING THE INJUNCTION

Under Fed. R. Civ. P. 60(b)(6), this Court may modify its orders for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Under the sixth factor of Fed. R. Civ. P. 60(b)(6), this Court may issue an order "clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent 'unwitting contempt.'" *Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F.Supp.2d 372 (S.D.N.Y.1998)(citing *Regal Knitwear Co. v. National Labor Relations Board*, 324 U.S. 9, 15, 65 S.Ct. 478, 89 L.Ed. 661 (1945); *see also N.A. Sales Co. v. Chapman Industries Corp.*, 736 F.2d 854, 858 (2d Cir.1984)(district court properly issued clarifying order that specified conduct that would violate injunction)). However, it is quite obvious that the requested clarification or modification must be consistent with the Court's prior findings.  *See e.g., Paramount Pictures*, 25 F. Supp. 2d at 374 (S.D.N.Y. 1998)(denying motion to clarify preliminary injunction because the moving party failed to establish that the requested clarification was supported fact).

### B. AWARDING ATTORNEY'S FEES

Under the "American Rule," the prevailing party is usually not entitled to attorney's fees. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602, 121 S. Ct. 1835 (2001). "An award of attorneys' fees to a litigant in federal court is improper in the absence of a contract, an applicable statute, a finding that the losing party acted in bad faith, or other exceptional circumstances." *Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996); *see also Sea-Land Serv., Inc. v. Murrey & Son's Co.*, 824 F.2d 740, 744 (9th Cir. 1987).

A plaintiff is considered a prevailing party if it "succeed[s] on any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983). To satisfy this requirement, the suit must have produced a material alteration of the legal relationship between the parties. *Buckhannon*, 532 U.S. 598, 604, 121 S. Ct. 1835 (2001). This alteration may be the result of an enforceable judgment or comparable relief through a consent decree. *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566 (1992).

Once the Court has determined that attorney's fees are warranted in a given case, the Court must then assess whether the amount of fees requested is reasonable. "'In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable.'" *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)). The first step the district court must take is to "determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Gracie*, 217 F.3d at 1070 (internal quotation marks and citation omitted). If a plaintiff achieves only partial success, the reasonable hours expended on the action as a whole multiplied by a reasonable rate may be an excessive amount. *Hensley*, 461 U.S. at 436. Next, the district court should, where appropriate, "adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir.1975), that have not been subsumed in the lodestar calculation." *Id.* (internal quotation marks and citation omitted).

The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

## III. DISCUSSION

### A. THE INJUNCTION SHOULD BE CLARIFIED

NDS's first requested modification to the Injunction is that a scienter requirement be added to the second and third provisions of the Injunction, such that it would only prohibit "knowing or wilful" activities. As currently written, the Injunction prohibits NDS, several related entities and individuals, and "anyone else with notice of th[e] Order" from:

> (1) Intercepting or receiving, anywhere in the United States, or assisting anyone in the United States, in intercepting or receiving, Echostar's satellite television signal without authorization;

> (2) In the State of California, for the purpose of intercepting or using Echostar's signal, making an unauthorized connection to Echostar's satellite television system, connecting or assisting another in connecting an unauthorized device to Echostar's satellite television system, making unauthorized modifications to an unauthorized device, or obtaining and using an unauthorized device to gain access to Echostar's signal; and

> (3) Manufacturing, assembling, or possessing a device, in the State of California, designed to decode Echostar's signal without authorization.

NDS and Echostar are in agreement that NDS would violate the Injunction, as presently written, if NDS "unwittingly [came] into possession of [] a device designed to pirate Echostar's signal through legitimate, law enforcement channels or security operations." Pl.'s Opp. 5:3 - 5:7. The Court further notes that adding a "knowing and intentional" element would not only clarify the Injunction, as currently written, but would also cause it to more explicitly conform to the California Unfair Competition Law, upon which the Injunction is based.

However, in its opposition papers to the Motion to Clarify Permanent Injunction, Echostar requested that, if the Injunction was modified to add a scienter requirement, the Injunction should be further modified to impose an affirmative duty on NDS to inform Echostar when it has an Echostar piracy device and to permit Echostar to inspect said device. This request goes beyond the language of the Injunction, rather than clarifying it. Further, it changes the nature of the Injunction, which was narrowly tailored in an effort to prevent ongoing monitoring by the Court and frequent disputes by the parties.

NDS's second requested modification to the Injunction does not comport with this Court's Findings of Fact and Conclusions of Law. NDS argues that this permanent injunction serves to inhibit NDS's ability to combat piracy. NDS states that the current injunction would, for example prevent NDS from "obtain[ing] and analyz[ing] Echostar-related piracy devices during the course of an investigation done in conjunction with a law enforcement agency" or other general actions undertaken as part of NDS's anti-piracy civil litigation efforts. Def.'s Mo. 1:14 - 1:17. Therefore, NDS requests that this Court add language to its permanent injunction that would "permit NDS to possess and analyze

pirate devices in connection with law enforcement investigation or anti-piracy civil litigation efforts." *Id*. 2:1 - 2:4.

As set forth in this Court's October 15, 2008 Findings of Fact and Conclusions of Law, "[t]he jury's verdict establishes that NDS engaged in illegal conduct in undertaking the P1 test...[and] [i]t is likely that NDS will continue to engage in future testing like the P1 test if not enjoined." The Court's October 15, 2008 order setting out the Injunction states: "unlawful testing of piracy equipment by actually receiving a competitor's signal without authorization is both piracy and an anti-competitive practice." This Court previously found that the Injunction's language was necessary in order to prevent NDS from engaging in illegal conduct in the future and there is no reason to change – rather than merely clarify – this language at this juncture.

For the foregoing reasons, the Injunction should only be modified so as to add a scienter requirement. The Injunction shall henceforth read as follows:

"NDS Group, PLC, its parents, subsidiaries, partners, joint venturers or other associated entities, their assigns, successors, trustees, receivers, or any of their owners, principals, officers, directors, executives, employees, contractors, consultants, agents, attorneys, or anyone acting in concert with any of them, or anyone else with notice of this Order is hereby ENJOINED AND PROHIBITED from engaging in any of the following or assisting others in any of the following:

(1) Intercepting or receiving, anywhere in the United States, or assisting anyone in the United States, in intercepting or receiving, Echostar's satellite television signal without authorization;

(2) In the State of California, for the purpose of intercepting or using Echostar's signal, ***knowingly and willfully*** making an unauthorized connection to Echostar's satellite television system, ***knowingly and willfully*** connecting or assisting another in connecting an unauthorized device to Echostar's satellite television system, ***knowingly and willfully*** making unauthorized modifications to an unauthorized device, or ***knowingly and willfully*** obtaining and using an unauthorized device to gain access to Echostar's signal; and

(3) ***Knowingly and willfully*** manufacturing, assembling, or possessing a device, in the State of California, designed to decode Echostar's signal without authorization."

## B. ATTORNEY'S FEES

### 1. This Litigation Presented Exceptional Circumstances That Warrant the

**Imposition of Attorney's Fees**

This is an exceptional case in which awarding attorney's fees is appropriate, despite the general prohibition against awarding attorney's fees under the American Rule.  This case involved over half a decade of litigation consisting of years of discovery and extensive motions, five amended complaints, and a four-week trial.  Approximately 81 witnesses were deposed.  More than 110 discovery subpoenas were issued to third parties.  NDS argues, *inter alia*, that although Echostar had access to information that linked individuals unconnected to NDS to Echostar's piracy problems, Echostar chose to ignore this information and force this case to trial.  NDS's Mo. for Attorney's Fees 1:19 - 1:22.  Echostar argues, *inter alia*, that "the protracted discovery process was unnecessarily multiplied by NDS's failure to produce documents and witnesses under their control."  Pl.'s Mo. for Attorney's Fees 2:19 - 2:21.  The Court need not resolve the continuing disputes between the parties as to their respective behavior during the past several years of contentious litigation.  Neither party is impecunious yet, as outlined in this Court's Findings of Fact and Conclusions of Law, both parties have achieved substantial successes that warrant the imposition of attorney's fees.

## 2. NDS and Echostar Each Partially Prevailed in this Litigation

At trial, Echostar sought actual damages and lost profits totaling approximately $184.8 million, treble damages, $823 million in disgorgement penalties, statutory damages of up to $1 billion.  Echostar also sought punitive damages and equitable relief.  The jury found for NDS on three of the six claims submitted.  More specifically, the jury found that NDS had not violated DMCA §1201(a)(1)(A), DMCA §1201(a)(2) or RICO §1962(c).  However, the jury found that NDS had violated both the Comm. Act and two provisions of the CPC, awarding actual damages of $45.69 under the Comm. Act, actual damages of $45.69 under CPC § 593d(a) and no actual damages under CPC § 593e(b).  The jury awarded the minimum possible statutory damages under the Comm. Act and the CPC – $500 under CPC §593e(b) and $1000 under the Comm. Act.

This Court then held that NDS had violated § 17200 of the Cal. Bus. & Prof. Code, largely as a result of its P1 test.  The Court therefore granted the Injunction, prohibiting NDS from engaging in future acts of piracy.  And yet, in its Findings of Fact and Conclusions of Law this Court also stated that the "jury [had] rejected Echostar's theory that NDS was responsible for the December 2000 Internet Posting," rejecting Echostar's request for restitutionary relief in the amount of $94,738,636.10.

In sum, despite the billions of dollars of monetary relief sought, Echostar only ended up receiving $1591.38 – and the jury did not find NDS guilty of the primary accusation (*i.e.*, that NDS was responsible for the December 2000 Internet posting).  On the other hand, Echostar obtained significant relief in the form of the October 15, 2008 Injunction and it forced Echostar to publicly sever ties with two well-known hackers (Christopher Tarnovsky and Allen Menard).  Further, despite the small monetary sums awarded, NDS was found guilty of half of the six claims submitted to the jury.  Courts

are cognizant of the fact that attorney's often raise their claims under various, plausible legal theories. Therefore, a party need not prevail on each claim asserted in order for award of attorney's fees to be appropriate.  *See, e.g., Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987).

### a. Echostar Cannot Receive Attorney's Fees Under California Business and Professions Code § 17200

Although Echostar did not obtain the precise injunctive relief requested, it did obtain significant relief through the Injunction that was ultimately issued by this Court.  A party may be said to "prevail," for purposes of awarding attorney's fees, by securing an injunction and/or monetary relief. *See, e.g., Friend v. Kolodzieczak*, 72 F.3d 1386 (9th Cir. 1995)(award of attorney's fees reasonable where party obtained only partial injunctive relief).  However, the Injunction was issued pursuant to the UCL and, as a matter of law, attorney's fees are unavailable under the UCL.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999).  Therefore, Echostar cannot receive attorney's fees for the injunctive relief that it obtained.

### b.  Echostar Should Receive Attorney's Fees under the California Penal Code and under the Communications Act.

Attorney's fees in favor of the prevailing party are mandatory under both the CPC and the Comm. Act.  *See* Cal. Penal Code § 593e(d);47 U.S.C. § 605(e)(3)(B)(iii).  However, the CPC does not provide a definition of "prevailing party" to be used in awarding attorney's fees.  In such circumstances, California courts require the court to determine prevailing party status "based on an evaluation of whether a party prevailed 'on a practical level.'"  *Donner Management Co. v. Schaffer*, 142 Cal.App.4th 1296, 1310 (2006)(citing *Gilbert v. National Enquirer, Inc*., 55 Cal. App.4th 1273, 1277 (1997)).

Echostar asserted five claims under the CPC.  One claim was dismissed on summary judgment, two claims were voluntarily dismissed by Echostar, and Echostar prevailed on the other two claims.  The jury awarded Echostar actual damages on these two claims - in the amount of $45.69 each - as well as statutory damages.  The jury clearly found for Echostar on the claims that were tried, allowing Echostar to expose NDS's wrongful acts (particularly the P1 Test).  This is enough to have prevailed on a "practical" level.

### c. NDS Should Receive Attorney's Fees under the DMCA and RICO

Congress modified the American Rule under the DMCA, granting the Court permission, in its discretion, to "award reasonable attorney's fees to the prevailing party." 17 U.S.C. § 1203(b)(5). Both plaintiffs and defendants are to be treated equally under this rule, meaning (1) that the defendant has "prevailed" if the Court finds the defendant has not violated the DMCA and (2) while there is "'no precise formula for making these determinations," neither the plaintiff nor the defendant may be held to

a more stringent standard in deciding whether to award attorney's fees under the DMCA. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436-437, 103 S.Ct. 1933, 1941-1942, 103 S.Ct. 1933 (1983)).  In making a determination as to whether or not to award attorney's fees under the DMCA, the U.S. Supreme Court has upheld the use of considerations such as "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence'" – "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 534-35 (citing *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (1986)); *see also The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003)(stating that "degree of success obtained" is to be considered in addition to the four aforementioned factors in determining whether or not to award attorney's fees under the DMCA).

          Under the first factor considered in deciding whether to award attorney's fees under the DMCA – the party's "degree of success" – NDS should prevail.  *See Traditional Cat*, 340 F.3d at 833 n.4 (listing the "degree of success obtained" as one factor, among many, that may be considered in awarding attorney's fees under the DMCA).  NDS's successful defense against the DMCA claims was substantial.  In this case, this Court dismissed one DMCA claim on summary judgment and, as stated earlier, the jury found for NDS on the remaining two DMCA claims.  Parties who prevail on summary judgment motions may be said to have "prevailed" for purposes of awarding attorney's fees under the DMCA.  *Fogerty*, 510 U.S. at 520 (defendant the "prevailing party" when it receives a favorable jury verdict).  More importantly, had the jury found that NDS was responsible for the 2000 Internet Posting, NDS would have faced the prospect of a damages award, under the remaining DMCA claims, of over a billion dollars.  Due to its substantial success, NDS should be awarded attorney's fees for its defense against Echostar's DMCA claims.

          NDS argues that it should also receive attorney's fees under the "22 other claims that were resolved in its favor" as summarized in paragraph 26 of the Synder declaration submitted in support of NDS's motion. Def.'s Reply in Support of Mot. 17:17 - 17:23.  Those claims provide no independent basis for the recovery of attorney's fees and the Court is not persuaded that a discretionary award of attorney's fees under them is necessary under Hensley's "intertwined" principle.  *Hensley*, 461 U.S. at 434-35.  There is one important exception, however.  Echostar's RICO claim, upon which it proceeded at trial, is intertwined with the DMCA claim as it alleged a conspiracy to engage in the same basic acts involved in the DMCA claim.

### d. NDS Should Not Receive Attorney's Fees under the Lanham Act

          The Lanham Act sets a high bar for awarding attorney's fees.  Courts may only award attorney's fees under the Lanham Act in "exceptional cases."  15 U.S.C. § 1117(a)(3).  The Ninth Circuit considers a case to be exceptional, under the Lanham Act, where the plaintiff's case is "groundless, unreasonable, vexatious or pursue in bad faith."  *Stephen W. Boney, Inc. v. Boney*

*Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997)(citing *Scott Fetzer Co v. Williamson*, 101 F.3d 549 (8th Cir. 1996)).

Because Echostar's Lanham Act claims were dismissed on summary judgment and because the summary judgment motion devoted only two pages to them, NDS argues that the Lanham Act claims were "groundless" and, therefore, pursued in "bad faith." However, the mere dismissal of certain claims on summary judgment is not enough to transform such claims into "groundless" claims, much less claims that were pursued in bad faith. *See, e.g., Jane L. v. Bangerter*, 61 F.3d 1505, 1514 (10th Cir. 1995).

This Court is mindful of the Supreme Court's statement in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421-22, 98 S.Ct. 694, 700 (1978), that district courts must resist "the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims...." In this Court's summary judgment motion, it devoted considerable attention and analysis to the issue of whether the unauthorized use of Echostar's trademark was likely to cause confusion or mistake. Thus, attorney's fees should not be awarded to NDS due to Echostar's failed Lanham Act claims.

### 3. Amount of Attorney's Fees

Echostar requests attorney's fees in the amount of $15,945,095.81, plus all costs and fees incurred since the preparation of Echostar's Motion for Attorney's Fees. In support of its request for attorney's fees, Echostar argues that all of its claims were related and that it should therefore be awarded attorney's fees for the time spent on all of its claims in this matter. This figure is not reasonable. In the Findings of Fact and Conclusion of law, this Court stated: "The jury's findings of liability on the Communications Act claim, liability on the California Penal Code claims, no liability on Echostar's DMCA claims, $45.69 in actual damages, and no malice, oppression or fraud demonstrate that **the jury rejected Echostar's theory that NDS was responsible for the December 2000 internet posting**." "**The claims that the jury upheld involved unauthorized interception of Echostar's signal**." 10:19 - 10:24 (emphasis supplied). Thus, as outlined above, Echostar did not prevail on its claims related to the December 2000 Internet Posting. Contrary to Echostar's argument, the December 2000 Internet Posting does not share a "common core of facts" with the unauthorized interception of Echostar's signal, such that all of Echostar's claims should be treated as related claims for purposes of calculating attorney's fees. As follows, Echostar's unsuccessful claims must be excluded. *Hensley*, 461 U.S. at 448.

This Court is faced with the extremely difficult task of excluding hours related to the legal work performed by Echostar on its unsuccessful claims as well a NDS's work on its unsuccessful claims, pursuant to *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 904 (9th Cir. 1995)(citing *Hensley*, 461 U.S. at 440, 436-37). In so doing, the Court may rely on "a mathematical

formula, even a crude one" to account for the limited success of both parties. *Id*. at 905. Because the CPC and Comm. Act claims represented three of the six claims submitted to the jury, the Court finds it appropriate to award 3/6 = ½ of the amount of attorney's *reasonably* expended by Echostar in this litigation.

Similarly, NDS requests an unreasonable award of reasonable attorney's fees in the amount of $23,914,983.74. NDS states that said fees only represent the fees expended on the 25 causes of action upon which NDS ultimately prevailed, including the DMCA, the Lanham Act, and RICO claims. Because the Court has only found that NDS prevailed – to the point of meriting attorney's fees – on the DMCA claims and RICO claim that went to trial, it is appropriate to reduce NDS's *reasonable* attorney's fees by 1/2.

### a.  Kerr Adjustments

### (1) Time and Labor Required

A reasonable hourly rate is the prevailing market rate for similar work performed by attorneys of comparable skill, experience, and reputation in the community. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). Both parties charged similar rate ranges to their staff involved in their representation (Echostar claims a rate range of $172 - 782 an hour for attorneys and NDS claims a rate range of $135 - 780 an hour for attorneys). However, NDS claims that it spent significantly more hours on this litigation than Echostar did, especially considering the fact that its reported hours excluded work on some unsuccessful causes of action. To wit, the Snyder and Wilsdon Declarations alone account for 47,609.80 work hours by both Yarmuth and O'Melveny & Myers, LLP, which is already more than the 45,958.49 work hours claimed by Echostar attorneys. The Shepard Declaration accounts for an additional $4,710,428.53 in attorney's fees by Hogan & Hartson, LLP, which surely represents a significant amount of work hours. Because the parties both presented work of a similar quality, NDS's claimed fees should be reduced to reflect this reality. As follows, NDS's fees should be reduced by a further 25%.

### (2) Results Obtained

The fact that the jury ultimately found for Echostar on some of the claims involved in this intensive case entitles them to receive a larger sum of attorney's fees than NDS. Accordingly, the Court awards an additional $5,000,000 to Echostar in addition to its full costs of suit, including non-taxable costs.

## IV. OUTCOME

For the foregoing reasons, NDS's Motion to clarify the Injunction is GRANTED, IN PART, and NDS and Echostar's Motions for Attorney's fees are BOTH GRANTED, IN PART. Echostar is to receive attorney's fees in the amount of $12,972,547.91 plus full costs of suit.  NDS is to receive attorney's fees in the amount of $8,968,118.90 and no costs.

The Clerk shall serve this minute order on all parties to the action.